UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DALTON H. PETTY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:16-cv-00365-TAB-JMS |
| ) | |
| CAROLYN W. COLVIN Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Plaintiff Dalton H. Petty appeals the Administrative Law Judge's denial of his application for Social Security benefits. Petty argues that the ALJ ignored evidence that his autism and Asperger's disorder were disabling. For the reasons set forth below, Petty's brief in support of appeal [Filing No. 19] is denied and the Commissioner's decision is affirmed.

**I.    Background**

An application for supplemental security income was filed on behalf of Petty on August 30, 2012, alleging disability beginning before Petty reached the age of eighteen. Petty was a child on the date of the application, but became an adult while this case was pending, on September 21, 2014. His application was denied initially and upon reconsideration under the child disability standard.

On September 24, 2014, Petty and his mother testified at a hearing before an ALJ. Shortly after the hearing, Petty's attorney submitted an additional medical source statement and requested a supplemental hearing with a medical expert. Finding a supplemental hearing unnecessary, the ALJ decided Petty's case under both the child and adult disability standards, concluding that Petty is not disabled under either standard. At step one, the ALJ found that Petty

has not engaged in substantial gainful activity since the date of the application. At step two, the ALJ found that Petty's severe impairments, as a child and as an adult, include pes planus, obesity, depression, anxiety, Asperger's disorder, and attention deficit hyperactivity disorder. At step three, the ALJ found that Petty's impairments do not meet or equal a listing as a child or as an adult. The ALJ concluded Petty is therefore not disabled under the child standard.

The ALJ went on to step four to consider whether Petty is disabled as an adult. The ALJ found that Petty has the RFC to perform a range of light work, limited to:

> sitting six hours during an eight-hour workday; standing and walking six hours during an eight-hour workday; lifting, carrying, pushing and pulling twenty pounds occasionally and ten pounds frequently; occasionally climbing, balancing, stooping, kneeling, crouching and crawling; no more than moderate exposure to extreme heat, extreme cold, wetness, humidity, dusts, fumes, gases or other respiratory irritants; simple routine tasks with the ability to attend, concentrate and persist for two hours at a time; no more than superficial interaction with the public, coworkers or supervisors; and no assembly line or production rate pace but more goal-oriented work.

[Filing No. 14-2, at ECF p. 33.] Having no past relevant work, the ALJ moved on to step five. The ALJ relied on the testimony of a vocational expert to find that Petty is able to perform the work of a houseman, lab sample carrier, or laundry worker. The ALJ concluded Petty is therefore not disabled under the adult standard. The ALJ's decision became final when the Appeals Council denied Petty's request for review. This appeal followed.

## II. Standard of Review

The Court must uphold the ALJ's decision if substantial evidence supports his findings. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). "The substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120 (7th Cir. 2014). The ALJ is obliged to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding

2

of nondisability while ignoring evidence that points to a disability finding. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). The ALJ need not mention every piece of evidence, so long as he builds a logical bridge from the evidence to her conclusion. *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).

**III.     Discussion**

Petty argues that he is disabled as an adult because he meets the listings for autism and Asperger's disorder. Petty's main arguments are that the ALJ erred by ignoring certain evidence of his autism and Asperger's disorder, and that the ALJ erred by failing to conclude Petty's chemistry teacher's evaluation demonstrates that he has marked impairments.[1] However, Petty fails to identify sufficient evidence to support his arguments and the minimal explanation he provides fails to show how the record demonstrates that he meets or equals a listing.

First, Petty argues that the ALJ would have found Petty met the listings for autism and Asperger's disorder if the ALJ had not rejected the evidence diagnosing and evaluating the disorder. Contrary to Petty's argument, however, the ALJ did not reject the evidence of Petty's Asperger's diagnosis and recognized it as a severe impairment, discussing the disorder throughout his decision. And as the Commissioner contends, Petty's diagnosis only establishes the impairment is present—not that it is disabling. To succeed on his argument, Petty must establish that evidence in the record demonstrates his autism and Asperger's impairments are disabling. *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998). It is not enough for Petty to simply show that he received a diagnosis, because impairments are not always disabling for purposes of Social Security. *Id.*

---

[1] Petty's brief incorrectly identifies Bailey as his special education teacher. [Filing No. 19, at ECF p. 16.] In the record, Bailey identifies himself as Petty's chemistry teacher. [Filing No. 14-8, at ECF p. 51.] Thus, the Court refers to Bailey as Petty's chemistry teacher.

3

Petty points to a four-page evaluation by Dr. Rayl. Petty argues that Dr. Rayl determined he has marked impairments in five functional domains: understanding and remembering short and simple instructions, carrying out short and simple instructions, making simple work-related decisions, interacting appropriately with the general public, and being aware of normal hazards and taking precautions. While Dr. Rahl found that Petty "meets the criteria for Asperger's disorder," she did not make the five functional determinations Petty alleges. [Filing No. 14-8, at ECF p. 117.] Dr. Rahl noted that Petty's insight and judgment appear poor and suggested Petty's cognitive functioning be assessed. [Filing No. 14-8, at ECF p. 116-17.] However, it is unclear, and Petty does not explain, why he interprets Dr. Rahl's evaluation as determining that he has marked impairments in five functional domains. Thus, this evidence is not indicative that Petty meets a listing.

Petty additionally cites a check-box form by Dr. Wilson, which the ALJ rejected as unsupported by the evidence of record. [Filing No. 14-2, at ECF p. 34.] Dr. Wilson's check-box form identifies marked impairments in five areas of functioning. However, Petty does not explain why the ALJ's rejection of Dr. Wilson's check-box form was erroneous. Rather Petty broadly argues the rejection was contrary to the evidence.[2] This argument is unpersuasive. Notably, a check-box form is considered weak evidence when it is not supported by medical records. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). Petty points to no evidence that supports Dr. Wilson's form nor does he explain why it should not have been rejected. Thus, the ALJ's rejection was not erroneous and the evidence does not show that Petty meets a listing.

---

[2] Notably, while Petty's opening brief contains almost 14 pages of facts, Petty's argument consists of barely more than two pages. [Filing No. 19.] Petty's reply brief contains only three pages of argument, two of which consist of block quotations. [Filing No. 23, at ECF p. 3-5.]

Petty also cites Dr. Dewitt's and Dr. Hill's psychological evaluations as evidence he meets a listing. Dr. Dewitt's evaluation took place when Petty was 14, at which time Dr. Dewitt suspected Petty may have an autism disorder, diagnosing him with "subtle features within the autism spectrum." [[Filing No. 14-7, at ECF p. 4](#).] Dr. Hill's evaluation took place when Petty was 15, at which time Dr. Hill diagnosed Petty with "ADHD, Asperger's, and Depression per mom's report." [[Filing No. 14-7, at ECF p. 92](#).] Dr. Hill also marked Petty's diagnosis as "[Rule-Out] Asperger's disorder." [[Filing No. 14-7, at ECF p. 95](#).] Neither evaluation contains a clear diagnosis of either autism or Asperger's disorder. The record shows that Petty was later diagnosed with Asperger's disorder, however neither evaluation by Dr. Dewitt or Dr. Hill demonstrates it is a listing-level impairment. As for autism, the ALJ did not find it was a severe impairment at step two, and Petty does not argue this was error. The only evidence Petty offers of an autism diagnosis is Dr. Dewitt's report, in which she did not diagnose the disorder.

Petty offers no other evidence to support a finding that he meets a listing, nor does he make more of a showing that his Asperger's disorder is disabling. The evidence Petty points to does not undermine the ALJ's finding that Petty's impairments do not meet a listing. Thus, the ALJ's conclusion stands.

Petty next argues that the ALJ erroneously rejected the evaluation by his chemistry teacher Bailey. Petty argues that Bailey's evaluation demonstrates he had marked limitations in two functional domains. This argument is instantly weakened by Petty's failure to identify which two domains. What is more, the Commissioner points out that the ALJ relied on Bailey's evaluation throughout the decision. For example, the ALJ relied on Bailey's opinion that Petty had some problems with acquiring and using information, but that the problems were not serious. [[Filing No. 14-2, at ECF p. 25](#).] The ALJ discussed that Bailey's report "indicates no serious

5

problems and no very serious problems, with attending and completing tasks" [Filing No. 14-2, at ECF p. 28], "noted no serious problems with interacting and relating" [Filing No. 14-2, at ECF p. 29], and "shows no problems with health and well-being." [Filing No. 14-2, at ECF p. 31.]

Petty argues that the ALJ failed to recognize that Bailey's use of the word "obvious" is synonymous with the word "marked." The Court disagrees. A marked limitation is "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2). Bailey's evaluation asks him to rate Petty's problems on a scale from one to five: one is "no problem," two is "a slight problem," three is "an obvious problem," four is "a serious problem," and five is "a very serious problem." [Filing No. 14-8, at ECF p. 52.] On this scale, an obvious limitation is more than slight and less than serious, which makes the word "obvious" synonymous with the word "moderate." Bailey did not rate any of Petty's problems higher than moderate, which is the threshold for marked limitations. Thus, Bailey did not opine that Petty had marked limitations.

The ALJ relied on Bailey's evaluation. Petty does not convince the Court that the evaluation demonstrates Petty meets or equals a listing, or that Petty's impairments are disabling. Thus, Petty's argument that the ALJ erroneously rejected Bailey's evaluation fails.

**V. Conclusion**

For these reasons, Petty has not demonstrated that the ALJ failed to build a logical bridge from the evidence to his conclusion that Petty is not disabled. The Court agrees with the Commissioner that the ALJ did not commit reversible error. Accordingly, the Court denies Petty's brief in support of appeal [Filing No. 19] and affirms the Commissioner's decision.

Date: 1/26/2017

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov